**PUBLIC CITIZEN, et al., Appellees,**

v.

**John CARLIN, Archivist of the United States, et al., Appellants.**

**Nos. 97–5356 and 98–5173.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 20, 1998.

Decided Aug. 6, 1999.

Matthew M. Collette, Attorney, U.S. Department of Justice, argued the cause for appellants. With him on the briefs were Frank W. Hunger, Assistant Attorney General, Douglas N. Letter, Appellate Litigation Counsel, and Miriam Nisbet, Special Counsel for Information Policy, National Archives and Records Administration.

Michael E. Tankersley argued the cause for appellees. With him on the brief was Alan B. Morrison.

Before: SILBERMAN, WILLIAMS, and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

In 1995 the Archivist of the United States promulgated General Records Schedule 20 pursuant to his authority under the Records Disposal Act. *See* 44 U.S.C. § 3303a(d). GRS 20 requires each federal agency to which the RDA applies to dispose of word processing and electronic mail files located in personal computers once it has copied them to a paper or an electronic recordkeeping system. *See General Records Schedule 20; Disposition of Electronic Records,* 60 Fed.Reg. 44,643 (1995).

Public Citizen and others sued the Archivist, the Executive Office of the President, and two components of the EOP (hereinafter collectively referred to as the

Archivist) under the Administrative Procedure Act, alleging that GRS 20 violates the RDA and is arbitrary and capricious. The district court agreed and, on cross-motions for summary judgment, entered a declaratory judgment holding the schedule invalid. *See Public Citizen v. Carlin,* 2 F.Supp.2d 1 (D.D.C.1997) (*Carlin I*).

The Archivist now appeals. We hold that GRS 20 is valid and therefore reverse the judgment of the district court. Because we uphold GRS 20, we need not decide whether, as the Archivist maintains, the Executive Office of the President may not properly be sued as an "executive agency" subject to the Federal Records Act, *see id.* at 8–9, nor whether the district court lacked the power to enter an injunction ordering the Archivist to comply with its declaratory judgment holding the schedule invalid. *See Public Citizen v. Carlin,* 2 F.Supp.2d 18, 20 (D.D.C.1998) (*Carlin II*).

## I. Background

The Federal Records Act is a collection of statutes governing the creation, management, and disposal of records by federal agencies. *See* 44 U.S.C. §§ 2101–18, 2901–09, 3101–07, 3301–24. The RDA portion of the FRA establishes the exclusive means by which records subject to the FRA may be discarded. *See id.* § 3314; *see also id.* § 3301 (defining "records").

The RDA requires an agency to get the approval of the Archivist before disposing of any record. *See Armstrong v. EOP,* 1 F.3d 1274, 1279 (D.C.Cir.1993). This is ordinarily done in either of two ways. In one the agency submits to the Archivist a list or schedule of records it proposes to discard, *see* § 3303, which the Archivist may approve only if he determines that the records "do not, or will not after the lapse of the period specified, have sufficient administrative, legal, research, or other value to warrant their continued preservation by the Government." § 3303a(a). In the other the Archivist promulgates a schedule listing types of records held by multiple agencies, which he has determined pursuant to the same standard of value should be discarded. *See* § 3303a(d). Whether the agency or the Archivist initiates the process, however, for the Archivist to authorize the disposal of a record is to order its disposal. *See* § 3303a(b). If the Archivist errs in authorizing disposal, therefore, valuable federal records could be lost forever.

Items 13 and 14, the only parts of GRS 20 challenged here, authorize the disposal of word processing and electronic mail files that have been copied to an agency recordkeeping system from a personal computer (whether stand-alone or net-worked). *See GRS 20,* 60 Fed.Reg. at 44,649/1.* In the preamble to GRS 20 the Archivist explained that a federal agency needs the authority to delete files from personal computers in order "to avoid system overload and to ensure effective records management." *Id.* at 44,644/2. He also explained that for

> records to be useful they must be accessible to all authorized staff, and must be

---

* The challenged items provide:

13. Word Processing Files

Documents such as letters, memoranda, reports, handbooks, directives, and manuals recorded on electronic media such as hard disks or floppy diskettes after they have been copied to an electronic recordkeeping system, paper, or microform for recordkeeping purposes.

Delete from the word processing system when no longer needed for updating or revision.

14. Electronic Mail Records

Senders' and recipients' versions of electronic mail messages that meet the definition of Federal records, and any attachments to the record messages after they have been copied to an electronic recordkeeping system, paper or microform for recordkeeping purposes.

Delete from the e-mail system after copying to a recordkeeping system.

(Note: Along with the message text, the recordkeeping system must capture the names of sender and recipients and date (transmission data for recordkeeping purposes) and any receipt data when required.)

maintained in recordkeeping systems that have the capability to group similar records and provide the necessary context to connect the record with the relevant agency function or transaction. Storage of electronic mail or word processing records on electronic information systems that do not have these attributes will not satisfy the needs of the agency or the needs of future researchers.

*Id.* at 44,644/1.

## II. Analysis

Public Citizen argues that in promulgating GRS 20 the Archivist exceeded his statutory authority in two respects: first, by applying the schedule to so-called "program" records, as opposed to "housekeeping" or administrative records, and second, by failing to set a specific time period for the retention of records before their disposal. Public Citizen also challenges as arbitrary and capricious the Archivist's determination that electronic mail and word processing files lack sufficient value to warrant continued preservation after they have been copied and placed in an agency recordkeeping system.

## A. Statutory Authority

■ Because the Archivist, as head of the National Archives and Records Administration, is charged with administering the RDA, *see* 44 U.S.C. § 3302, we review his interpretation of the Act under the two-step analysis of *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Under step one, we ask "whether Congress has directly spoken to the precise question at issue." *Id.* at 842, 104 S.Ct. 2778. If so, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43, 104 S.Ct. 2778. If, however, the statute is silent or ambiguous with respect to the specific issue, then at step two we "must defer to the agency's interpretation so long as it is reasonable, con-

sistent with the statutory purpose, and not in conflict with the statute's plain language." *OSG Bulk Ships, Inc. v. United States*, 132 F.3d 808, 814 (D.C.Cir.1998).

### 1. Housekeeping versus program records

■ According to Public Citizen, "GRS 20 is contrary to law because it ... authorizes destruction of all types of word processing and electronic mail records without regard to content." More specifically, Public Citizen claims § 3303a(d) applies only to an agency's "housekeeping" records—that is, records that relate to routine administrative chores such as personnel and procurement—and that the Archivist exceeded his statutory authority by promulgating a general records schedule covering "program" records, which document an agency's substantive functions.

### a. *Chevron* step one

We begin the interpretive enterprise, as always, with the text of the statute. *See Republican Nat'l Comm. v. FEC*, 76 F.3d 400, 405 (D.C.Cir.1996). As the Archivist observes, § 3303a(d) makes no reference either to program or to housekeeping records; rather, it authorizes him to schedule for disposal "records of a specified form or character." Because this term is nowhere defined in the RDA, "our task is to construe it in accord with its ordinary or natural meaning." *Director, Office of Workers' Comp. Pgms., Dep't of Labor v. Greenwich Collieries*, 512 U.S. 267, 272, 114 S.Ct. 2251, 129 L.Ed.2d 221 (1994). And § 3303a(d) is naturally read to authorize the Archivist to schedule records in the "form" of word processing and electronic mail files. *See* WEBSTER'S NEW INT'L DICTIONARY UNABRIDGED 992 (2d ed.1942) ("In general, *form* is the aspect under which a thing appears, esp. as distinguished from substance" (emphasis in original)). Moreover, as the Archivist observes, elsewhere in the RDA "form" is used to describe

the physical attributes of a record rather than its content. *See* § 3301 (" 'records' includes all books, papers, maps, photographs, machine readable materials, or other documentary materials, regardless of physical form or characteristics"). Indeed, we notice that in 1976 the Congress amended § 3301 to provide that "records" may be in the "form" of "machine readable materials." Federal Records Management Amendments of 1976, Pub.L. No. 94–575, § 4(c)(2), 90 Stat. 2723, 2727.

Although Public Citizen would have us read § 3303a(d) so as not to authorize the Archivist to schedule a record in the form of a word processing or electronic mail file if its content relates to a program function of the agency, it offers no interpretation of the statutory term "form." On the contrary, Public Citizen concedes that the "phrase ['of a specified form or character'] in isolation includes program records." Apparently, then, it means to suggest either that the term "form" really means "content" or that it should be ignored. We can not accept either suggestion. *See Edison Elec. Inst. v. EPA*, 996 F.2d 326, 335 (D.C.Cir.1993) (elementary canon of construction that court will not read word out of statute).

Public Citizen tries to overcome the plain meaning of the statute—which seems to reject rather than to compel the proffered distinction between program and housekeeping records—exclusively by resort to the legislative history of the RDA. As Judge Easterbrook has explained, however:

> The political branches adopt texts through prescribed procedures; what ensues is the law. Legislative history may show the meaning of the texts— may show, indeed, that a text "plain" at first reading has a strikingly different meaning—but may not be used to show an "intent" at variance with the meaning of the text.

*In re Sinclair*, 870 F.2d 1340, 1344 (7th Cir.1989) (enforcing statute prohibiting conversion of bankruptcy case from chapter 11 to chapter 12 despite conference report saying conversion possible and describing circumstances in which it should occur); *see also* Oliver Wendell Holmes, *The Theory of Legal Interpretation*, 12 HARV. L. REV. 417, 419 (1899) ("We do not inquire what the legislature meant; we ask only what the statute means").

In any case, we do not think the passages in the legislative history to which Public Citizen refers us suggest that the Congress intended only housekeeping records to be subject to disposal under the RDA. The primary concern of the Congress was to reduce the unnecessary retention of records. Agencies were retaining too many records, not too few, and it is unsurprising that the Congress especially contemplated the disposal of many housekeeping records. *See* H.R.REP. No. 79–361, at 1 (1945) ("The primary purpose of this bill is to prevent the United States Government from incurring large and unnecessary expenses resulting from the failure of many agencies to schedule for disposal routine 'housekeeping' records such as those relating to the hiring of personnel, procurement of supplies, and fiscal management, that are common to many or all agencies"); S.REP. No. 79–447, at 1 (1945) (same). As the Supreme Court has observed, however, statutes "often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (holding prohibition of discrimination "because of sex" in Title VII of Civil Rights Act of 1964 applies to same-sex harassment, though that "was assuredly not the principal evil [with which] Congress was concerned").

■ Public Citizen also notes that in 1978, when the Congress made the Archivist's use of general records schedules binding upon agencies subject to the RDA, *see* Pub.L. No. 95–440, 92 Stat. 1063, 1063 (codified as amended at § 3303a(b)), the

committee reports not only expressed concern with the unnecessary retention of housekeeping records, but also stated that if "the records are unique to an agency, rather than simply of a general nature, they would not be affected by this bill." H.R.Rep. No. 95–1263 at 2 (1978), *reprinted in* 1978 U.S.C.C.A.N. 2623, 2624; S.Rep. No. 95–711 at 2 (1978). Public Citizen claims the 1978 amendment thus reaffirmed the limitation of § 3303a(d) to housekeeping records originally evinced in the 1945 committee reports, inasmuch as program records could be of a type unique to the agency that administers the particular program. As the Archivist points out, however, the amendment made the use of general records schedules mandatory by substituting a new § 3303a(b) so providing, but did not in any way change § 3303a(d). If the latter section did not mean what Public Citizen claims it meant in 1945, then it still does not because nothing in the 1978 amendment changed its meaning. Even if, however, we were to assume the statement in the 1978 reports demonstrates the committees' understanding that § 3303a(d) had been limited from the outset to housekeeping records, we would be reluctant to rely upon it; "the views of one Congress as to the meaning of an Act passed by an earlier Congress are not ordinarily of great weight." *United States v. X–Citement Video, Inc.*, 513 U.S. 64, 77 n. 6, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994); *see also Republican Nat'l Comm.*, 76 F.3d at 405 (holding that where subsequent legislation merely carried over earlier provision "without substantial change, the House report is essentially post-enactment history, carrying little probative weight").

In sum, we cannot accept Public Citizen's invitation to use legislative history to supplant rather than to interpret the statute.

### b. *Chevron* step two

We now proceed under step two of *Chevron* to examine whether the Archivist's interpretation "is reasonable in light of the language, legislative history, and policies of the statute." *Republican Nat'l Comm.*, 76 F.3d at 406. Public Citizen asserts that it would be irrational to construe § 3303a(d) in such a way as "to give the Archivist the power to authorize the destruction of *all* records stored on a given medium or created by a given technology, without regard to the records' purposes [or] content."

This argument is based upon a misunderstanding of GRS 20 and the Archivist's rationale for adopting it. Under § 3303a(d) the Archivist must assess the "administrative, legal, research, or other value" of a record before authorizing its disposal—which is inherently a content-based judgment. As the district court reasoned, there must be "a relationship between the commonality of records covered by a general schedule and their diminished value." *Carlin I*, 2 F.Supp.2d at 12. We agree, for if there were little or no relation between the features common to a set of records and their value, then they could not be scheduled for disposal pursuant to a general records schedule because no categorical assessment could logically be made of their value.

The district court concluded from this that the "common feature of the records scheduled under GRS 20—the fact that they have been generated by electronic technology—has no relation to each record's value." *Id.* That captures only half the matter, however. GRS 20 does not authorize disposal of electronic records *per se*; rather, such records may be discarded only after they have been copied into an agency recordkeeping system.* Therefore, GRS 20 seems to us to embody a reasoned approach to accomplishing the potentially conflicting goals of the Con-

---

* One might say, tracking the statute, that the records share both the "form" of being electronic and the "character" of having been duplicated and placed in an agency recordkeeping system.

gress: "[j]udicious preservation and disposal of records." § 2902(5).

We note also that in a neighboring part of the RDA the Congress codified the very approach that Public Citizen claims it prohibited in § 3303a(d). Section 3303(1) requires the head of each agency to submit to the Archivist

> lists of any records in the custody of the agency that have been photographed or microphotographed under the regulations and that, as a consequence, do not appear to have sufficient value to warrant their further preservation by the Government.

Analogously, GRS 20 authorizes disposal of electronic mail and word processing files that have been copied to a recordkeeping system and, "as a consequence," *id.*, lack sufficient value to warrant their continued preservation. The technology of duplication may be different but the principle is the same. We think this provision highly persuasive in demonstrating that the Archivist's approach in GRS 20 does not reflect an unreasonable interpretation of the statute.

Public Citizen also claims that "the Archivist's unexplained departure from prior statements that general schedules are limited to administrative records ... requires that [GRS 20] be set aside." The prior statements to which Public Citizen refers, however, apparently concerned authorizations to discard the only extant version of a record, not a record that had been copied to a recordkeeping system; at the least, Public Citizen has directed our attention to no prior statement of the Archivist concerning an approach analogous to that in GRS 20. Moreover, the Archivist claims, and Public Citizen does not dispute, that GRS 23, the predecessor to GRS 20, applied to program records at the same time Public Citizen claims the Archivist's policy limited general schedules to housekeeping records. *See GRS 20,* 60 Fed.Reg. at 44,-644/1 ("The GRS 23 that was approved in 1988 authorized deletion of word processing and e-mail records from [personal computers] after they had been copied to paper or microform. This authority has now been moved to GRS 20 and is extended to authorize deletion of [such records] after they have been copied to an *electronic* recordkeeping system"). When a general schedule authorizes disposal of an uncopied record, it is obvious why the Archivist would wish to exclude program records, for an error means the loss of a record; when a record is discarded pursuant to GRS 20, however, it has already been copied to the agency's recordkeeping system, and there is no risk that information will be lost to future users. We conclude, therefore, that Public Citizen has identified no policy of the Archivist with which GRS 20 is inconsistent. *See Bush–Quayle '92 Primary Comm. v. FEC,* 104 F.3d 448, 454 (D.C.Cir.1997) ("We may permit agency action to stand without elaborate explanation where distinctions between the case under review and the asserted precedent are so plain that no inconsistency appears").

In sum, we hold under *Chevron* step one that § 3303a(d) does not preclude the Archivist from including program records in a general schedule because the statutory source of his authority draws no distinction between program and housekeeping records. Under *Chevron* step two we hold that the Archivist permissibly construed the statute to allow the disposal of program records the contents of which have been preserved in a recordkeeping system. Accordingly, we uphold the Archivist's interpretation against this challenge.

2. Time specified for disposal of records

■ The Archivist may authorize the disposal of records under a general schedule "after the lapse of specified periods of time," if such records will not then have sufficient value to warrant their preservation. § 3303a(d). In GRS 20 he instructed agencies to delete word processing and electronic mail files after their transfer to a recordkeeping system, although word

processing files may be retained until "no longer needed for updating or revision." *GRS 20,* 60 Fed.Reg. at 44,649/1.

Public Citizen argues that GRS 20 contravenes § 3303a(d) because the Archivist did not "specif[y] periods of time" in months or years for the retention of records. The Archivist responds that the statute does not require him to specify the time at which records may be discarded in months or years, and that he did specify the time for disposal of such records by reference to a condition subsequent, namely, the placement of the records in a recordkeeping system. We agree.

As to *Chevron* step one, we do not see how the phrase "specified periods of time" can be said unambiguously to require the Archivist to select a period in terms of months or years. Whether the period to elapse before a record may be discarded is expressed rigidly in terms of months or years, or more flexibly in terms of when a record has been transferred to a recordkeeping system, a precise moment has been specified. Similarly, under *Chevron* step two, if the Archivist is to make the best determination of when records of a certain type will cease to have sufficient value to warrant their retention, then it is eminently sensible that he be able to rest that determination upon a future condition the occurrence of which will diminish the value of the records, without requiring that he predict precisely when that will occur.*

Public Citizen argues next that the Archivist's approach defeats the purpose of the RDA because the event that triggers the agency's obligation to discard a record is within the control of the agency, not that of the Archivist, and that GRS 20 thus removes the Archivist as a check upon an agency's disposal of records. This point is not well taken for, as the Archivist ex-

plains, he "has not provided an open-ended grant of authority for agencies to delete records at their leisure." Before an agency may discard electronic mail or word processing files, pursuant to GRS 20 it must first copy them to a recordkeeping system; an agency's control over the timing of that decision is irrelevant to the result that the record is preserved, and therefore that the Archivist has indeed placed a critical check upon an agency's disposal of electronic records.

We therefore uphold the Archivist's interpretation of § 3303a(d) as permitting him to base the time for disposal of records upon their having been copied and placed in a recordkeeping system.

### B. *Arbitrary and Capricious Challenge*

■ Recall that under § 3303a(d) the Archivist may promulgate general records schedules authorizing the disposal of records only if he determines that "such records will not, at the end of the periods specified, have sufficient administrative, legal, research, or other value to warrant their further preservation." Public Citizen claims the Archivist made no such determination of value in GRS 20. Curiously, it then concedes he implicitly (and, Public Citizen argues, erroneously) determined that once a copy of such a record is placed in a paper or electronic recordkeeping system, the original lacks sufficient value to warrant its further preservation. We accept Public Citizen's concession that the Archivist made a determination of value, though we think it explicit rather than implicit: The Archivist explained—in a discussion entitled "Value of Electronic Records," *see GRS 20,* 60 Fed.Reg. at 44,643/3 to 44,645/2—that records located in personal computers cannot adequately be

---

* Although Public Citizen claims the Archivist failed to make this argument to the district court, we see that the Archivist reasoned both in his reply memorandum in support of his motion for summary judgment and in GRS 20 itself that the statute authorizes him to order disposal of records "after they have been cop-

ied to [a] recordkeeping system." *GRS 20,* 60 Fed.Reg. 44,649/1 (items 13 & 14); *see National R.R. Pass. Corp. v. Boston & Maine Corp.,* 503 U.S. 407, 420, 112 S.Ct. 1394, 118 L.Ed.2d 52 (1992) ("we defer to an interpretation which was a necessary presupposition of the [agency's] decision").

searched and are therefore "of limited use to both the originating agency and to future researchers." *Id.* at 44,645/2. The question we must now decide is whether the Archivist's determination of value is arbitrary and capricious.

We first note that Public Citizen does not contest the permissibility of discarding the electronic original of a record that has been fully copied to an electronic recordkeeping system. Instead, Public Citizen "stresse[s] that hard copy [*i.e.*, paper] records are not satisfactory replacements for records in electronic format[, citing] the well-known advantages of electronic records for future research." *GRS 20*, 60 Fed.Reg. at 44,643/3. Our focus, therefore, is upon whether the Archivist acted arbitrarily and capriciously in determining that a paper copy in a paper recordkeeping system is an adequate substitute for the electronic original, that is, to the point that the original lacks sufficient value to warrant its continued preservation. Two considerations inform this inquiry: (1) the superiority of electronic records for searching, manipulating, and indexing information, and (2) the completeness of the information copied to a paper recordkeeping system.

### 1. Superiority

Public Citizen argues the Archivist acted arbitrarily and capriciously when he authorized (and thereby required) disposal of the original electronic records after they have been printed and placed in a paper recordkeeping system; as the Archivist himself recognized, records in electronic form can be searched, manipulated, and indexed in ways that paper records cannot. *See, e.g., id.* The Archivist explained his decision on the ground that these admitted benefits accrue to any significant degree only for electronic records that are maintained in an electronic recordkeeping system:

> For records to be useful they must be accessible to all authorized staff, and must be maintained in recordkeeping systems that have the capability to group similar records and provide the necessary context to connect the record with the relevant agency function or transaction. Storage of electronic mail or word processing records on electronic information systems that do not have these attributes will not satisfy the needs of the agency or the needs of future researchers.
>
> Search capability and context would be severely limited if records are stored in disparate electronic files maintained by individuals rather than in agency-controlled recordkeeping systems. Furthermore, if electronic records are stored in electronic information systems without records management functionality, permanent records may not be readily accessible for research. Unless the records are adequately indexed, searches, even full-text searches, may fail to find all documents relevant to the subject of the query. In addition, numerous irrelevant temporary records, that would be segregable in systems with records management functionality, may be found. Agency records can be managed only if they are in agency recordkeeping systems.

*Id.* at 44,644/1–2.

Public Citizen's argument ignores this obviously material difference between the value of records that are part of an agency's centralized recordkeeping system and the value of those that are accessible only by searching a particular personal computer. We do not think the Archivist acted unreasonably in discounting the comparative value of "disparate electronic files maintained by individuals rather than in agency-controlled recordkeeping systems." *Id.*; *see also id.* at 44,646/1 ("Even accessible network word processing directories are inadequate if they are part of information systems that lack records management functionality").

Public Citizen next claims that many agencies either are now or will in the foreseeable future be capable of managing

their records in electronic form on an agency-wide basis. This point, too, the Archivist addressed in promulgating GRS 20, as follows:

Agencies must maintain their records in organized files that are designed for their operational needs. Agencies that currently have traditional paper files print their electronic mail records, word processing records, spreadsheets, and data base reports so that their files are complete, comprehensible, and in context with related records. Agency functions that have not been automated must be supported by hard copy files, even when some types of related records are generated electronically. Agencies that decide to maintain their records in electronic recordkeeping systems do so for compelling operational needs, not for future researchers. In some cases ... agencies create automated indexes to hard-copy records rather than digitizing all of the records themselves. In any case, the decision must be based on an analysis of the needs of and benefits to the agency, balanced against available resources.

*Id.* at 44,645/1.

According to Public Citizen this explanation, which permits each agency to decide whether to retain records in electronic form or to transfer them to paper based solely upon the agency's operational needs, *i.e.,* the "administrative" value of the records, fails adequately to consider the "research" value of the records. § 3303a(d). Public Citizen also relies upon the following statement in the preamble to another final rule promulgated the same day as GRS 20, in which the Archivist set standards whereby an agency may establish a recordkeeping system for electronic mail:

Electronic recordkeeping systems may be the best means to preserve the content, structure, and context of electronic records. In addition, an automated system may be more easily searched and manipulated than paper records. The electronic format may also allow simul-

taneous use by multiple staff members and may provide a more efficient method to store records. Furthermore, when they are no longer needed by the creating agency, access by future researchers to permanently valuable electronic records would be enhanced by electronic preservation.

*Final Rule: Electronic Mail Systems,* 60 Fed.Reg. 44,634, 44,639/1–2 (1995).

Contrary to Public Citizen, we think it plain that the Archivist adequately weighed not only the "administrative" but also the "legal, research, and other value" of records in arriving at his decision. § 3303a(d). In the Electronic Mail Systems rule upon which Public Citizen relies, the Archivist explained that "neither the standards [in that rule] nor the Federal Records Act require[s] electronic recordkeeping," 60 Fed.Reg. at 44,634/3. He conceded that electronic records will be of greater use for research if maintained in electronic recordkeeping systems and even encouraged agencies to develop those systems where practicable. But he also explained that

the prospective interests of future researchers cannot be used to force agencies to do the impossible nor can these interests dictate to agencies how they should preserve their records for their own use. Agencies must create and maintain records to conduct Government business and account for their activities. Only the agency can determine what format best serves these purposes. Some agencies, or components of agencies, may determine that paper recordkeeping will continue to be adequate and cost-effective for the documentation of their transactions.

*Id.* at 44,638/1–2.

Public Citizen's argument that the Archivist failed to consider the research value of electronic records, therefore, reduces to the assertion that it is arbitrary and capricious for the Archivist not to require all agencies that create electronic mail or

word processing records either to establish electronic recordkeeping systems immediately or to retain their electronic records until such time as they have electronic recordkeeping systems. In view of the Archivist's explanations in both *GRS 20* and the *Electronic Mail Systems Rule,* however, we think his decision to permit agencies to maintain their recordkeeping systems in the form most appropriate to the business of the agency is reasonable. Nor does Public Citizen claim that agencies have a legal duty to establish electronic recordkeeping systems.

We agree with Public Citizen that electronic recordkeeping has advantages over paper recordkeeping, but our duty as a reviewing court is to ask only whether the Archivist's policy choice is arbitrary or capricious; manifestly it is not. All agencies by now, we presume, use personal computers to generate electronic mail and word processing documents, but not all have taken the next step of establishing electronic recordkeeping systems in which to preserve those records. It may well be time for them to do so, but that is a question for the Congress or the Executive, not the Judiciary, to decide.

In sum, we do not think the Archivist must, under the RDA, require agencies to establish electronic recordkeeping systems. Nor do we think it unreasonable for the Archivist to permit each agency to choose, based upon its own operational needs, whether to use electronic or paper recordkeeping systems. The Archivist's finding that electronic records are of limited use unless maintained in a recordkeeping system is reasonable as well. Consequently, we uphold his ultimate determination that a record in electronic form lacks sufficient value to warrant preservation once it is transferred intact to a paper recordkeeping system.

### 2. Completeness

In *Armstrong* we held that a paper printout of an electronic mail record is not an "extra cop[y]" within the meaning of § 3301 if it does not include transmission data, such as the names and addresses of both the recipient and the author and the date the message was sent—the electronic equivalents of the address, return address, and date on correspondence sent by conventional mail. *See* 1 F.3d at 1283. Public Citizen cites *Armstrong* for the proposition that electronic records often contain information that may not be transferred to paper when printed; its point is that GRS 20 is arbitrary and capricious because it does not require this information to be preserved. The Archivist responds that GRS 20 does in fact require that all such information be preserved in the agency's recordkeeping system before the electronic original may be discarded. We agree with the Archivist.

With respect to electronic mail, GRS 20 on its face addresses the concerns raised in *Armstrong* by requiring the recordkeeping system to capture all relevant transmission data. *See* 60 Fed.Reg. at 44,646/3, 44,649/1 (item 14 and Note thereto). Public Citizen identifies no information that may not be transferred when the record is copied to paper pursuant to the requirements of GRS 20.

With respect to word processing files, Public Citizen claims, based upon the capabilities of extant computer software, that there may be hidden comments or summaries that are not printed out—the electronic equivalents of a Post-it® note or an abstract—the preservation of which is not required by GRS 20. *See id.* at 44,649/1 (item 13). Although the Archivist claims in his brief that GRS 20, properly interpreted, does require the preservation of such hidden items in word processing records, he did not make that point express in promulgating GRS 20. The Archivist explains that GRS 20 requires retention of all such information, for the preamble to the schedule requires that a recordkeeping system "preserve[ ] the[ ] content, structure, and context" of a record. *Id.* at 44,644/1. In other words, as counsel for the Archivist put it at oral argument, if the

information is part of a record under the RDA, *see* § 3301, then it must be preserved. Thus, the Archivist claims that GRS 20 says precisely what Public Citizen thinks it should but does not say.

■ The Archivist's interpretation of his own regulation is "controlling unless plainly erroneous or inconsistent with the regulation." *Auer v. Robbins,* 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997). That standard is easily met here. We also note that the Archivist's interpretation is consonant with the requirement in GRS 20 that a word processing file be "copied" to a recordkeeping system. 60 Fed.Reg. at 44,649/1 (item 13); *see Armstrong,* 1 F.3d at 1283 (explaining that "unless the paper versions include all significant material contained in the electronic records ... the two documents cannot accurately be termed 'copies'"). That the Archivist's interpretation comes for the first time in litigation does not make it unworthy of deference, as "[t]here is simply no reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question." *Auer,* 519 U.S. at 462, 117 S.Ct. 905. Considering the substance of that interpretation, we trust that Public Citizen is not aggrieved by this indulgence.

■ Lastly, Public Citizen complains that the Archivist improperly relies upon the preamble in his interpretation of the general schedule. We regularly rely upon the preamble in interpreting an agency rule. *See National Mining Ass'n v. EPA,* 59 F.3d 1351, 1355 n. 7 (D.C.Cir.1995). The purpose of the preamble, after all, is to explain what follows. *See* 5 U.S.C. § 553(c) ("After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose").

In sum, we reject Public Citizen's claim that GRS 20 fails to require that all relevant information be transferred to a paper recordkeeping system before an electronic original may be discarded.

### III. Conclusion

For the foregoing reasons, we uphold GRS 20. We therefore need not decide whether the Executive Office of the President is a proper party to an action brought under the RDA, nor whether the district court had the power to enter an injunction ordering the Archivist to comply with its declaratory judgment holding the schedule invalid. Accordingly, the judgment of the district court is

*Reversed.*